60 F.3d 833
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Fred J. EDER and Patricia Eder, Plaintiffs-Appellants,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellee.
 No. 93-17375.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 13, 1995.
Decided July 7, 1995.
 
 Before: SCHROEDER, BEEZER and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Fred and Patricia Eder appeal the district court's grant of summary judgment in favor of Allstate Insurance Co. ("Allstate") on the Eders' claims for breach of an umbrella personal liability policy ("umbrella policy"), bad faith denial of coverage and intentional misrepresentation. The Eders allege that Allstate was obligated to provide a defense to a suit brought by their former landlord alleging, in part, that the Eders had damaged the leased property. The district court held that the landlord's claims were contractual in nature, and were therefore outside the scope of the umbrella policy's coverage. We have jurisdiction over the Eders' timely appeal under 28 U.S.C. Sec. 1291. We affirm in part, reverse in part, and remand.
 
 
 3
 * The parties stipulated to the following facts before the district court: The Eders were covered by the umbrella policy for a period during which they leased a house from Retha Buchanan-Stellbrink ("Buchanan"). The lease contained the following term:
 
 
 4
 Tenant shall keep the premises and furniture, furnishings and appliances, if any, and fixtures which are leased for his exclusive use in good order and condition and pay for any repairs to the property caused by Tenant's negligence or misuse or that of Tenant's invitees.
 
 
 5
 After the Eders moved out of the house, Buchanan sued them in California state court for breach of the lease agreement. Buchanan's complaint alleged, in part, that the Eders breached the lease by "causing significant damage to the premises."
 
 
 6
 The Eders tendered defense of the underlying suit to Allstate. Allstate ultimately denied coverage on several grounds: (1) that the claims were contractual and therefore not covered, (2) that the suit did not allege an "occurrence," as required to invoke coverage, and (3) that the claims fell within a coverage exclusion for property in the insured's care, or for which the insured agreed to be responsible. The Eders then filed the present suit in state court, and Allstate removed it to district court on the basis of diversity.
 
 
 7
 On cross-motions for summary judgment, the district court held that the claims in the underlying suit were contractual, and thus not covered. The district court further held that where there is no coverage there can be no bad faith and that the Eders had failed to allege intentional or negligent misrepresentation with the requisite particularity under Federal Rule of Civil Procedure 9(b). Accordingly, the court denied the Eders' motion and granted Allstate's. The Eders appeal.
 
 II
 
 8
 We review the district court's grant of summary judgment de novo. Atwood v. Newmont Gold Co., 45 F.3d 1317, 1320 (9th Cir.1995). California law applies to this diversity action. The district court's interpretation of state law is reviewed de novo. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).
 
 III
 
 9
 The umbrella policy provides coverage "when an insured becomes legally obligated to pay for personal injury or property damage caused by an occurrence." This language has been interpreted by the California courts to cover tort, but not contract liability. See Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1365 (9th Cir.1991). An insurer must provide a defense to a suit "that raises the potential for covered losses." Id. at 1364 (citing Gray v. Zurich Ins. Co., 419 P.2d 168, 176 (Cal.1966)). We first determine whether the underlying suit raised the potential that the Eders might be liable to Buchanan in tort.
 
 
 10
 That Buchanan denominated her claim as one for breach of contract is not dispositive. The issue is whether there is any potential for the underlying complaint to assert a tort claim, rather than whether the plaintiff in the underlying suit pleaded a cause of action in tort. Devin v. United Serv. Auto. Ass'n, 8 Cal.Rptr.2d 263, 268 (Cal.Ct.App.1992). The insurer owes a duty to defend if it learns facts, from the complaint or any other source, that create a potential for the assertion of a covered claim. Id.
 
 
 11
 Buchanan's complaint against the Eders alleged that they had breached the lease agreement by "causing significant damage to the premises." Discovery revealed that the alleged damage included carpet stains, cracked tile floors, water damage in the kitchen, and other physical damage to the house. Importantly, under the terms of the lease, the Eders were liable only for damage that was the result of negligence. In alleging that the Eders had breached the lease by causing the damage, Buchanan's complaint impliedly alleges that the Eders caused the damage negligently. Buchanan's complaint therefore raises the potential for the assertion of a cause of action in tort. Irrespective of the terms or existence of the lease, the Eders would be liable to Buchanan for damage to the leased property proximately caused by their negligence. Under California law, this potential was enough to invoke Allstate's duty to defend.
 
 
 12
 Allstate nevertheless argues that it had no duty to defend because, even if Buchanan could have pleaded a cause of action in tort, such a tort claim would inescapably have arisen from the existence or breach of the lease. This argument is unpersuasive on the facts of this case. Allstate relies on several cases where no liability coverage was found because torts alleged in the underlying complaints were tortious only because the conduct complained of was also a breach of contract.[1] See Chamberlain, 931 F.2d at 1364-65 (claim for intentional infliction of emotional distress due to breach of quasi-marital contract); Fragomeno v. Insurance Co. of the West, 255 Cal.Rptr. 111, 116-17 (Cal.Ct.App.1989) (claim for unlawful detainer due to insured's breach of the terms of a lease); Fireman's Fund Ins. Co. v. City of Turlock, 216 Cal.Rptr. 796, 800-01 (Cal.Ct.App.1985) (claim for damage to character and reputation due to breach of secrecy agreement).
 
 
 13
 Turlock is instructive in this regard. In determining that the underlying suit was solely contractual, the court stated: "The critical point is that absent the promise not to disclose [the insured] could not have been liable for the disclosure." Turlock, 216 Cal.Rptr. at 800. By contrast, absent the terms of the lease the Eders could have been liable to Buchanan for damage they negligently caused to the leased property. The allegedly negligent actions complained of would be tortious regardless of whether they were also a breach of the lease.
 
 IV
 
 14
 Allstate argues in the alternative that it owed no duty to defend because Buchanan's complaint did not allege an accidental "occurrence" within the meaning of the umbrella policy. This argument is without merit. As argued, this is simply a recast of Allstate's primary theory: that the Eder's liability to Buchanan was solely contractual. Allstate contends that the Eders' liability to Buchanan arose not from their alleged negligent acts causing damage to the house, but rather from their failure to pay for that damage as required by the lease. This strained gloss on Buchanan's complaint does not help Allstate; a failure to pay presupposes a duty to pay. In this case, any duty the Eders allegedly had to pay for damage to the house arose, at least potentially, due to their negligence. A negligent act causing damage to another's property is an accidental, not intentional, "occurrence." See Chamberlain, 931 F.2d at 1364.
 
 
 15
 Buchanan's complaint and other facts subsequently available to Allstate potentially gave rise to a covered claim. Unless an exclusion applied, Allstate had a duty to defend the Eders from Buchanan's suit.
 
 V
 
 16
 Allstate argues that the Buchanan's claim fell within an exclusion in the umbrella policy covering property of others for which the Eders agreed to be responsible. The district court did not reach this argument, but we can affirm on any legal ground supported by the record. New Kids on the Block v. News Am. Publishing, Inc., 971 F.2d 302, 305 (9th Cir.1992). This exclusion does not apply.
 
 
 17
 The exclusion applies to "property damage to any ... property owned by others which an insured agreed to insure or for which an insured agreed to be responsible." The proper interpretation of this provision is that it excludes coverage only where the insured's liability arises from the agreement to be responsible for another's property (i.e. where the insured's liability under the agreement is greater than it would have been absent the agreement). Allstate urges a broader reading that would exclude from coverage any claims for damage to property subject to such an agreement, regardless of the source of liability.
 
 
 18
 The narrower interpretation more faithfully gives effect to the reasonable contemplation of the parties. See Bank of the West v. Superior Court, 833 P.2d 545, 552 (Cal.1992) (explaining that a policy term should be interpreted in accord with the understanding of an objectively reasonable layperson, within the context of the instrument as a whole). The umbrella policy's primary purpose was to indemnify the Eders against liability imposed upon them by law. Allstate contracted to provide this indemnity, and received a premium for its promise. As the exclusion at issue reflects, however, Allstate was not contracting to indemnify the Eders against additional liability for damage to others' property that they voluntarily took upon themselves.
 
 
 19
 The crux of the issue is whether the lease term was an "agree[ment] to be responsible" within the meaning of the exclusion. We hold that it was not. In order for the Eders meaningfully to "agree" to be responsible for Buchanan's property, they would be required to undertake more responsibility than they had prior to the agreement. Here, the agreement did not change the status quo; the Eders were already responsible for any damage they negligently caused to Buchanan's property. They did not "agree" to be responsible for the house in any way that affected their liability in the underlying suit. Thus, the Eders' "agreement" did not purport to make Allstate liable under the umbrella policy for any claims outside its original contemplation, nor does the present suit.
 
 
 20
 This conclusion is supported by the Fire Casualty and Surety Bulletin ("FC & S Bulletin"), an insurance industry publication used by insurance brokers and agents to interpret policy terms. See Fireguard Sprinkler Systems, Inc. v. Scottsdale Ins. Co., 864 F.2d 648, 652 (9th Cir.1988). Allstate strenuously argues that the FC & S Bulletin may not be considered in interpreting the exclusion because the policy language is not ambiguous.[2] Allstate is incorrect. See Prudential-LMI Commercial Ins. Co. v. Reliance Ins. Co., 27 Cal.Rptr.2d 841, 844 (Cal.Ct.App.1994) (stating with reference to the FC & S Bulletin: "[I]t is difficult to characterize as 'objectively unreasonable' an interpretation which would result in coverage which is proffered by insurance industry experts."). It is Allstate that is arguing in favor of an interpretation of the exclusion contrary to that put forth in the FC & S Bulletin. Under that circumstance, it is difficult for Allstate to argue that the exclusion is not reasonably susceptible to different meanings.
 
 
 21
 The Bulletin supports the Eders' position: "The usual interpretation of this kind of exclusion is that it applies only to the extent that the insured's liability exceeds that under common law or statute." The Eders' position is correct; they never "agreed to be responsible" for Buchanan's house within the meaning of the exclusion.
 
 
 22
 Buchanan's suit potentially gave rise to a covered claim under the umbrella policy and no exclusion barred coverage. Allstate therefore had a duty to defend the Eders from Buchanan's suit, and summary judgment in favor of Allstate on this claim was improper.
 
 V
 
 23
 Finding no potential for coverage, the district court granted summary judgment for Allstate on the Eders' claim for bad faith denial of coverage. We affirm summary judgment on this claim. Because there was a genuine issue as to whether the complaint gave rise to a covered claim, Allstate's refusal to defend was not made in bad faith. See Franceschi v. American Motorists Ins. Co., 852 F.2d 1217, 1220 (9th Cir.1988).
 
 
 24
 The district court granted summary judgment primarily on the theory that where there is no coverage, there is no bad faith. See Gourley v. State Farm Auto Ins. Co., 822 P.2d 374 (Cal.1991). As we have concluded that the summary judgment for Allstate on the issue of duty to defend must be reversed, this theory no longer supports a judgment for Allstate on the bad faith claim. Again, however, we can affirm on any legal basis supported by the record. New Kids on the Block, 971 F.2d at 305.
 
 
 25
 Without more, an insurer's breach of the duty to defend gives rise to a contractual claim, rather than one in tort. California Shoppers, Inc. v. Royal Globe Ins. Co., 221 Cal.Rptr. 171, 184-85 (Cal.Ct.App.1985). The court in California Shoppers indicated that where a breach of the duty to defend was accompanied by other facts indicating bad faith, a cause of action in tort for breach of the covenant of good faith and fair dealing could exist. Id. We have determined that, where there is a genuine issue as to whether a claim is covered under an insurance policy, an insurer's refusal to provide coverage does not give rise to a claim for bad faith. Franceschi, 852 F.2d at 1220.
 
 
 26
 There was a genuine issue as to whether Allstate was required to defend the Eders. In Franceschi, we affirmed summary judgment on a bad faith claim despite our determination that the insurer had incorrectly denied coverage. Id. We determined that because the insurer's interpretation of an ambiguous policy term was not arbitrary or unreasonable, there was a genuine issue as to coverage. See also Safeco Ins. Co. v. Guyton, 692 F.2d 551, 557 (9th Cir.1982) (holding that there was a genuine issue as to coverage due to complex question of proximate causation under California law). There is no evidence in the stipulated record that Allstate acted in subjective bad faith. Allstate's position with regard to the primary coverage issue is at least arguable.
 
 
 27
 Under these circumstances, summary judgment for Allstate on the bad faith claim was proper.
 
 VI
 
 28
 Finally, the district court concluded that the Eders failed to plead intentional or negligent misrepresentation with the requisite specificity. See Fed.R.Civ.P. 9(b). We agree.
 
 
 29
 The only "misrepresentations" alleged by the Eders were Allstate's promises to indemnify and defend the Eders from liability in certain situations (i.e. to perform under the insurance contract). We agree with the district court that such a general statement fails to comply with Rule 9(b). The Eders' complaint does not identify with particularity who made the misrepresentations, when or where they were made, or even their content in any but the most general terms. This is insufficient to place Allstate on notice of the nature of the claims against it. See Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir.1994) (explaining that fraud "pleading must state precisely the time, place, and nature of the misleading statements"), petition for cert. filed, 63 USLW 3849 (U.S. May 10, 1995).
 
 
 30
 The district court properly dismissed the Eders' misrepresentation claims.
 
 CONCLUSION
 
 31
 We REVERSE the district court's judgment in favor of Allstate on the Eders' claim for breach of the duty to defend. The remainder of the district court's judgment is AFFIRMED. The case is REMANDED to the district court for further proceedings consistent with this memorandum.
 
 
 32
 Allstate shall bear costs on appeal.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 One case upon which Allstate relies is completely off-point. The dispositive issue in Insurance Co. of the West v. Haralambos Beverage Co., 241 Cal.Rptr. 427, 431 (Cal.Ct.App.1987) was that the underlying complaint sought to recover only economic damages for fraud and breach of contract, rather than property damage or bodily injury, the only types of damage covered by the insurance contract. Here, the relevant injury is "property damage" to the house
 
 
 [2]
 Allstate also argues that the portion of the FC & S Bulletin cited by the Eders applies to a wholly different exclusion in the policy. That contention is frivolous. As the Eders take great pains to make clear, the FC & S Bulletin actually quotes the exclusion at issue in reference to the interpretive section relied upon by the Eders