**Ruth FONTAINE, M.D.,**
**Plaintiff/Counter-defendant/Appellant,**

v.

**PROVIDENT MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA; Provident Life and Accident Insurance Company, Defendants/Counter-claimants/Appellees.**

No. 99–56157.

D.C. No. CV–97–7675–WDK.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2001.

Decided March 19, 2001.

Before BEEZER, T.G. NELSON, and BERZON, Circuit Judges.

## MEMORANDUM *

Plaintiff Ruth Fontaine, M.D. ("Fontaine") appeals the district court's grant of partial summary judgment with respect to her claims for breach of the covenant of good faith and fair dealing (bad faith) and punitive damages. We reverse the grant of summary judgment on the bad faith claim and affirm the grant of summary judgment on the punitive damages claim.

Fontaine began working in private practice as an anesthesiologist in California in 1987. In 1990, she obtained a disability policy from defendants Provident Mutual Life Insurance Company of Philadelphia and Provident Life and Accident Insurance Company ("Provident"). The policy included coverage for "Total Disability," which occurs when, as a result of sickness or injury, the insured is unable to perform the material and substantial duties of the insured's regular occupation (*i.e.*, anesthesiology).

After a few years of practice, Fontaine began to suffer from alcoholism, insomnia, anorexia and hypotension, and on two occasions, she attempted to commit suicide at work by inhaling anesthetics. In 1992, Howard Steven Shapiro, M.D., diagnosed Fontaine as suffering from Post Traumatic Stress Disorder with dissociative features and Major Depression. Dr. Shapiro concluded that, as a result of her psychological condition, she could no longer perform the material duties of an anesthesiologist. Fontaine submitted a claim to Provident for total disability, which Provident accepted.

In December 1996, Provident had Fontaine examined by an independent medical examiner, Mark S. Lipian, M.D., Ph.D. Dr. Lipian concluded that Fontaine was able to perform the material duties of an anesthesiologist and recommended an 18-month plan for Fontaine to transition back into the profession. Based on this recommendation, Provident terminated Fontaine's disability benefits and provided a check equivalent to six months of benefits to help her in the proposed transition.

Fontaine filed suit alleging breach of contract, bad faith, intentional infliction of emotional distress, fraud and punitive damages. Provident moved for summary judgment on all claims except the breach of contract claim. The district court granted the motion and the case proceeded to trial on the contract claim. The jury found that Fontaine was "totally disabled" from working as an anesthesiologist, although it awarded only half of the benefits ($83,500, as opposed to $167,000) otherwise due under the policy. Fontaine appeals the district court's grant of summary judgment dismissing her claims for bad faith and punitive damages.

■ To establish a breach of the implied covenant of good faith and fair dealing (bad faith) under California law, a plaintiff must show: (1) the insurer withheld benefits due under the policy, and (2) the reason for withholding benefits was unreasonable or without proper cause. *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 271 Cal.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Rptr. 246, 255 (Cal.Ct.App.1990). Here, it is established that Provident withheld disability benefits due under the policy. The jury found Fontaine was "totally disabled" from working as an anesthesiologist and Provident does not challenge this finding on appeal.

Fontaine, however, must still show that Provident was unreasonable in withholding the disability benefits. *See Franceschi v. American Motorists Ins. Co.*, 852 F.2d 1217, 1220 (9th Cir.1988) (applying California law) (summary judgment dismissing bad faith claim may be appropriate even if demonstrated that insurer withheld benefits due under policy). The reasonableness of an insurer's denial is determined with reference to the information known or reasonably available to it at the time of denial. *See Austero v. National Cas. Co.*, 84 Cal.App.3d 1, 148 Cal. Rptr. 653, 673 (Cal.Ct.App.1978), *overruled on other grounds, Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 169 Cal. Rptr. 691, 699 n. 7, 620 P.2d 141 (Cal. 1979). If a genuine dispute as to coverage existed at the time benefits were denied, then the court can conclude as a matter of law that the insurer did not act unreasonably. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.2001). This principle, known as the genuine dispute doctrine or the genuine issue as to coverage rule, may apply to coverage disputes of a factual nature as well as coverage disputes of a legal nature. *Id.* at 993–94.

Provident contends that Dr. Lipian's conclusion that Fontaine was not totally disabled from practicing anesthesiology demonstrates that a genuine dispute as to coverage existed at the time Provident terminated Fontaine's benefits. Fontaine's principal argument in response is that Provident failed to thoroughly investigate her claim before terminating benefits and, therefore, the coverage dispute was not genuine and Provident's decision was unreasonable. An "insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." *Egan*, 169 Cal.Rptr. at 696, 620 P.2d 141. However, a " 'thorough' investigation is not necessarily a perfect investigation; and the mere fact that in hindsight there may be other areas that could have been investigated does not always establish bad faith." Hon. H. Walter Croskey et al., *California Practice Guide: Insurance Litigation* § 12:866 (The Rutter Group 1999).

Fontaine contends that, while Provident did investigate whether she was capable of performing the duties of an anesthesiologist, it unreasonably failed to investigate whether any institution would actually hire Fontaine in light of her present and past mental condition. An insured's employability in the marketplace is relevant to whether the insured is totally disabled. *Moore v. American United Life Ins. Co.*, 150 Cal.App.3d 610, 197 Cal.Rptr. 878, 890–91 (Cal.Ct.App.1984) ("The test of total disability . . . requires that the real-world employment marketplace be considered in determining whether an insured is totally disabled.") (internal quotation marks omitted).[1]

Had Provident investigated this matter, Fontaine argues, Provident would have learned she was unhireable. Fontaine submits undisputed evidence from several

1. Provident is probably correct that whether hospitals would unlawfully discriminate against Fontaine in violation of the American with Disabilities Act is not relevant to whether Fontaine is employable. This does not mean, however, that *employability* is irrelevant, as Provident suggests; it simply means that *discrimination* is likely irrelevant. Provident has made no showing that a hospital's refusal to allow Fontaine to practice anesthesiology would constitute unlawful discrimination.

physicians stating that, because of her mental condition, no hospital would allow her to practice anesthesiology or otherwise "credential" Fontaine. For example, one physician provided in his declaration, "Based upon my experience for many years on a credentials committee, Dr. Fontaine would not be granted privileges to practice anesthesiology despite what Dr. Lipian and Provident opine, even if Dr. Fontaine felt that her treating physicians were wrong and Dr. Lipian was correct."

Provident offers no evidence to the contrary. Instead, Provident argues that Dr. Lipian in fact considered Fontaine's employability. At best, the record reflects that Dr. Lipian assumed Fontaine was hireable because, according to his findings, she was functionally capable of performing the duties of an anesthesiologist. No evidence suggests Dr. Lipian actually inquired into whether his present diagnosis of Fontaine, combined with Fontaine's history of mental problems (including two suicide attempts at work), precluded Fontaine from ever being hired as an anesthesiologist. Nor does the record indicate that Dr. Lipian had sufficient knowledge of hospital credential practices to assess Fontaine's employability without specifically inquiring into the matter. Finally, considering that Dr. Lipian knew Fontaine had twice attempted to commit suicide at work by inhaling anesthetics, Provident cannot claim that there was no reason to suspect Fontaine might be unhireable.

We conclude Fontaine has raised a triable issue with respect to whether Provident acted unreasonably in terminating disability benefits and a triable issue with respect to whether Provident's dispute as to coverage was genuine. We reverse the district court's grant of summary judgment dismissing Fontaine's bad faith claim.

Fontaine also argues that the district court erred in granting summary judgment in favor of Provident on her claim for punitive damages. To recover punitive damages, a plaintiff must show by clear and convincing evidence that the defendant is guilty of oppression, malice or fraud. *Lunsford v. American Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (applying California law). Although Fontaine's evidence is sufficient to raise a triable issue that Provident acted unreasonably in terminating benefits, it is not sufficient to raise a triable issue with respect to whether clear and convincing evidence shows Provident is guilty of oppression, malice or fraud. We affirm the district court's conclusion that Fontaine's claim for punitive damages cannot survive summary judgment.

We remand to the district court for trial on Fontaine's claim for bad faith. The parties shall bear their own costs on appeal.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.